Case number 20-5202, Mohammed Jibril, individually and on behalf of their minor children, Y.J. and O.J. et al, at-balance, v. Alejandro N. Mayorkas, in his official capacity as Secretary of the Department of Homeland Security et al. JMP for the at-balance, Mr. Waldman for the appellees. Ms. JMP, good morning. Good morning, Your Honors, and may it please the Court. My name is Christina JMP, and I am representing the Jibril family. They are a family of seven members who were separated, questioned, searched, detained, and suffered harm at the hands of the defendant appellees here. They were separated from their two-year-old and other minor children, all of whom were patted down and searched extensively with long delays over two incidences or two time periods which I've set forth in the complaint. They articulated clear and individualized harm, and they challenged their reasonable belief of their continued placement in the terrorist screening database run by the terrorist screening center. Do they challenge their inclusion? I'm sorry? Do they challenge their inclusion on the list, or do they only challenge the trip process? I interpreted the complaint to challenge the trip process, but not their actual inclusion on the list. Is that correct? Your Honor, through the complaint, they are challenging the fact that because they reasonably believe that they remain on the watch list, they are challenging the procedures as they applied to them, and they're challenging the actions which took place both through the Fourth Amendment, Fifth Amendment, and then APA claim. When you say the procedures that apply to them, you mean the TSA trip procedures? The trip redress is the only avenue that's available to them for seeking any kind of, any redress, any kind of resolution of the matter, and to get any kind of post-deprivation, essentially, resolution or restoration. But, and so we are challenging those procedures and processes. We're also challenging the fact of what happened during the actual search, all of which is based on their presumption  Do they intend to travel in spite of their belief that they're on the Selectee List, or are they saying we would travel, were it not for our inclusion on the Selectee List? Your Honor, would they, let me be clear just to, the travel that they assert that they want to do in the future that's asserted in the complaint is to Saudi Arabia and to Jordan and involves religious trips for religious holiday for Hajj, which happens every year. What they state in the complaint is that they want to do this in the future, but they don't want to put the family through what they went through the last time, what happened in the incidents that are described in the complaint. And because of that, it's had a chilling effect and they are substantially less likely to even try it. They have not tried since the incidents that are described in the complaint, although for the intervening time period, COVID restrictions and others have certainly interfered and hampered any efforts for attempts. I would point out that at the current time, the Department of State lists Saudi Arabia as a level four do not travel advisory due to COVID concerns, and also lists Jordan as a level three heavily encouraged reconsidering travel due to COVID concerns. Just to give the current framework of what's available to them. But as they've stated in the complaint, they have family members who have been traumatized by the experiences, which were more than mere inconveniences that are more than incidental, were going well beyond- In Lujan, the court said no standing because the possible travel was not impending. And from what you've just said, it sounds like the Jibril's travel is not impending so long as they believe they're on the selectee list. Your Honor, they've identified specific reasons and time periods that they want to travel, that they intend to travel. For example, for Hajj, which they list in the complaint at- Even if they're on the selectee list. They want to and they intend to. They would like to be able to do so without having the entire family go through this again, without being separated from the minor children and without the substantial delays which occurred. I'm not trying to be difficult. I really am just trying to get some clarity and it's not meant from a hostile place. If COVID didn't exist and if the selectee list didn't exist, I take it from the complaint that within two or three years, they would travel overseas. But the selectee list does exist. So take COVID out of the picture. So long as they believe they are on the selectee list, do they nevertheless intend to travel overseas within the next two or three years? Yes, they do, Your Honor. Okay, thanks. I would also point out that in Lujan, that language applied to the motion for summary judgment stage and not for the motion to dismiss stage where we are here. I agree. It's true as well of the El Hadi case, which the government's council has sought or had cited and relied on previously out of the fourth stage. So those were both motion for summary judgment cases and not at the motion to dismiss stage. But here, the plaintiff's due at the age of real family does intend to travel again for the religious as well as family reasons, which are identified in the complaint and would do so at those times, again, once able to do so. And then we get in on the tangent of just three items of right now. But they do stay in the complaint that they intended to do so. Counsel, can I ask you, what are you, maybe this is about the cause of action, but I'm trying to get a better handle on what's before us. You're not seeking nominal damages for whatever injury was done to them at the time that they took this last trip, as I understand it. So that's not before us. Your focus, I think, your focus seems to be on a request for injunctive relief going forward. So there's a question about, it's what my colleague asked, do we know that they're really gonna travel again? But what is it that you mean to say about statutes or regulations that allow a person to be on the list? Is your underlying claim that you cannot have set statutes or regulations that unless they guarantee finding a probable cause before I'm stopped and searched? Or what is it that was wrong at the time of the search? Was it the search and the way it was done? Was it the regulations and statute that permitted the search? What are you saying? What's your argument? Yes, Your Honor, we're saying that the way that the search was done and the extent of the search without any reasonable suspicion, without anything that is set forth to give reason to target this family. Well, you're saying if the statute, are you saying the statute and regs permit that? That the government has the right under the statute and regs to stop and search someone in these terms without a showing of probable cause and therefore the statutes and regs are impermissible and unlawful, is that what you're saying? We are saying that, Your Honor, and we are also saying that as it applied to these individuals, both that the regulations allow far too much leeway that we believe contravenes the law, particularly where they don't relate to reasonable suspicion. We are also saying that as it happened with these individuals, even that the officials went beyond even what is listed in those regulations. So both that as it happened with them specifically and what the regulations allow are both inappropriate. So you're saying there's a facial challenge to the regs and the statute that would allow the TSA or other agencies to stop someone in the airport for an extended search. You're saying that's facially invalid. Any such statute or regulations that allows that absent of showing a probable cause is unlawful. Is that what you're saying? I believe, Your Honor, that we actually say reasonable suspicion as well as probable cause, but what we're saying is that in the competing interests, what is written and how it is currently written exceeds what is reasonable and what the law permits. Not that no searches should occur as certainly they should, but that what occurred here is not what was standard. What occurred here went far beyond what the average traveler endures. And that's what I'm struggling with. I hear what you're saying. And then at some level, it's frustrating that we have to deal with things like this. But there's some would say for good reason we do. But in any event, I'm trying to understand whether you're saying, look, facially, these regulations in this statute are simply impermissible because they allow government officials to do something that we don't allow as a constitutional matter or whatever else you're arguing. Is that what you're saying? Or are you saying what happened to these people was as applied, was impermissible because it was beyond what is permitted? What are you saying? We're saying both, Your Honor. We're saying that as currently written, the regulations that DHS has provided itself with far too much authority. That they have permitted themselves to be far too invasive and to have searches which are far more extensive. Again, we have the Fourth Amendment claim as well here and not just the Fifth Amendment claims. And that they exceed the scope of what is lawful, particularly when we're looking at reasonable suspicion which should be involved here and come into play. And then we are also saying that even with those expensive authority that the DHS regulations grant to the agencies, that they exceeded those. And that here, even if those are found to be lawful, that the treatment of this family and the treatment of separating one minor children- It's not any statute you're challenging is unconstitutional, but the regulatory regime. Is that what you're saying? Correct, Your Honor. We are challenging regulations. Specifically, what regulations? Yeah, that's my next question. What regulation is at issue? We are challenging the DHS, first of all, the DHS TRIP framework. And which- No, wait, at least for me anyway. That's not gonna be helpful. Because I'm trying as a judge to figure out what are you resting on here? What's your legal challenge? And if it's not the statute and it is the regulation, then I, as a judge, wanna know, well, what in the regulation do you say is impermissible? That's different from your as-applied. I realize you have as-applied. They did more than they're allowed to do. But I'm trying to figure out what is the facial challenge to the regulation? Because I missed it, that you're making. Your Honor, what we are challenging here is that we are challenging the fact that we are challenging the regulations. And again, they're not, the policies and procedures, which we also referenced, that DHS has in place, which grants its authority. And I can get the specific citations from the complaint momentarily or for rebuttal. But that DHS has given itself what we believe to be far too broad authority beyond what Congress intended. I could frame that, and I'm not trying to be cute. I could frame that to suggest that what you mean to say is the government has given itself the authority to make mistakes and to hold up people who should not be held up, and that's impermissible. Or what? Or the government has given itself authority to stop anyone they want, with or without evidence. I'm not sure what it is you're saying. I would say far closer to the second one, Your Honor. What we're saying is that the government has given itself authority, the agencies have given themselves the authority to stop with little to no reason. The standards that are referenced in what we believe to be improperly provided and relied upon declarations, in this case, which are not available to the district court here, make reference to the standards, and the standards for being placed on a watch list and being considered somebody to be stopped on a selectee list or enhanced selectee list are so subjective and not, there are things that require a basically reasonable suspicion of a reasonable suspicion, if even that, which is circular language, which does not identify. So in terms of relief, so, one way or another, you're saying that the act of stopping them was impermissible. And I guess that's under your category of declaratory relief. And then you're seeking injunctive relief, that is the going forward relief. What in particular are you putting under the category of declaratory relief? You're not seeking nominal damages. So whatever happened, happened. It's beyond us now. So are we simply into the category, because we got to deal with the Supreme Court's most recent case, Transunion or whatever, I think I have it right, distinguishing between request for declaratory relief and injunctive relief, because if it's strictly the injunctive relief, then you're very much stuck with the problem of how do you deal with the case law that says you have to show us that this is likely to happen again. And Your Honor, what we're seeking is, for the declaratory relief, we seek in the prayer of the complaint, a declaration that the plaintiff's rights were violated in the Fourth Amendment and under the Fifth Amendment for lack of due process. And we are seeking a declaration that the defendant's actions were arbitrary and capricious and violate the APA. So those are declarations which are available. And then seeking a declaration that the defendant's policies, practices, and customs, including DHS-TRIP, but not limited to just that, violate the APA and the Constitution and fail to allow for a meaningful opportunity to be heard. And what we seek would be in order that DHS-TRIP be ordered to revise its policies to provide plaintiffs and persons like them with a meaningful opportunity to challenge their apparent inclusion in the terrorist screening database and any selectee list or watch list, and to re-examine the plaintiff's inquiries and to have DHS-TRIP revise its procedures to allow for that. But you have to show a likelihood of future injury? Yes, and we believe that we do by stating that they do intend, again, to travel in the future as identified in the complaint. They have an extended history of traveling overseas over- Have shown that they are on a list that will make them vulnerable. Correct, and the reason that we believe- Correct, what, you have shown that? I'm sorry? You have shown that they are on a list that will make them vulnerable? We believe that for the motion to dismiss stage that we have shown that there's a reasonable likelihood based on the treatment that they underwent and based on the letters which the family received in response to their DHS-TRIP complaints, which were not identical. At least some, we believe, remain on the watch list. We cannot get confirmation because the government holds all the cards on that, on stating whether they're on the watch list or not, or allowing them a meaningful opportunity to challenge that placement. That's not at the Jabril's, it's not something they have an ability to access at this time. It's not something that they have the capability of confirming for sure, but we do know that the family received two different letters. Not every family member received identical letters as a result of the DHS-TRIP complaints. And so they reasonably believe that they remain on a watch list. And which watch list, we don't know. And we can't prove that at this point. That's why we would like the opportunity for discovery to go forward. And through discovery, we may find out that they're not. We may find out that their belief is mistaken, but right now we don't know that. And we may find out, we may be able to find out that they are. We may be able to have that proof to be able to confirm that. But all of that evidence is in the hands of the government. They used the only redress option available to them, which is DHS-TRIP, and they didn't get anything from that. So they have a reasonable belief that based on what they did get, which is just the letters at the conclusion, which did not match, which are different as to different family members, that they reasonably believe that they continue to be on a watch list. Those other questions we believe would be more suitable for the motion for summary. What do you think is the percent chance that they are on the selectee list? I would believe 90 or greater. I think based on what we've seen from this case and other, quite frankly, other clients that we handle, if it's a pattern, it appears that they are. The fact that they had previously traveled in prior years without issue does not mean that they aren't now. And we believe that they were put on the watch list after those prior clean travel experiences. They had not had a clean travel experience since the ones articulated in the complaint. So we believe it to be incredibly likely. And quite frankly, that is also based on the patterns that we've seen with other plaintiffs, other clients that we see, it fits the pattern. All right, so you think you have a 90% chance of being on a 2% chance of being on this watch list because your opponent has submitted evidence that 98% of the people who have requested information on whether they're on the list have mistakenly requested. In other words, they're misidentified. So that leaves 2%. And you think you have a 90% chance of being in that 2%. Is that correct? We do, Your Honor, we do believe that. All right, if there are no more questions, we'll hear from Mr. Waldman. But Ms. Jump, if you would, while he is speaking, if you would find for me the allegation in the complaint in which you expressly say that but for this past treatment, your clients would travel again. Yes, Your Honor. All right, Mr. Waldman. Thank you, Your Honor, and may it please the Court, Joshua Waldman from the Department of Justice for the Appellees. District Court correctly held that the plaintiffs have not met their burden to establish standing by showing a substantial likelihood of future harm. The plaintiff's complaint lacks any concrete or specific future travel plans and fails for that reason alone. But even if they had overcome that hurdle, the allegations about two trips three years ago do not and would not give rise to a plausible inference of a substantial risk that plaintiffs would be subject to the same types of security screening during any future travel, especially in light of their concession that they've flown multiple times over many years without experiencing any such security screening. Mr. Waldman, do you have an answer to the question I asked Ms. Jump? What do you think is the percentage chance that at least Mr. Jabril is on the selected T-list? Well, I don't, just to be frank, I wouldn't put a percent number on that, and I'm not sure how anyone would do that except through speculation. I mean, so here's some of the facts that would inform that estimate, and I don't deny it's an estimate. But in his last overseas trip, he started at LAX and had to wait an hour and he received CLAWDAS boarding passes, and he had to wait two hours in security, had a subsequent luggage check that's not normal. When he got to Jordan, he was interrogated for two hours. Then on the return trip, starting at Jordan, he once again got CLAWDAS boarding passes. He was told American officials have an issue with him. He was required to go through preclearance before flying. His connecting flight at Abu Dhabi, he had to wait an extra 45 minutes. With Abu Dhabi officials, and then an extra four hours from American Custom Border Patrol agents. And then when he arrived in LA, he had to wait an hour. Now, that is not typical for someone who flies overseas. I'm not saying it guarantees that he's on the selectee list, but someone who's had that experience the last time that they've flown overseas, what do you think is the percent likelihood that that person's on the selectee list? Well, Your Honor, I'm not going to put a percent likelihood, but I will respond to those allegations by pointing out the following things. Number one, all of the lengthy delays occurred during an international flight. I think people routinely experience much longer delays during border crossings than they do during domestic travel. And the Supreme Court has said, for example, in the Montoya case, a couple of hours delay is to be expected for a border crossing. I appreciate that. Who gets the Quad S boarding passes? Anyone selected for enhanced securities cleaning, whether it's for random selection or for other reasons. So the fact that you get Quad S does not indicate at all. And in fact, I would point out, Your Honor, you pointed to the Jordan trip with a Quad S and something that somebody said, some unnamed person said about what Americans, but you'll notice in the complaint, nothing happened on that flight. There are zero allegations about the flight from Jordan to UAE about delays or searches. Right, right. I appreciate that. So, I mean, probably all of us who have flown have sometimes, you know, you go through the metal detector or the little spinning X-ray thing and it goes beep and the TSA agent very politely says, nothing to worry about, you've been randomly selected. We're going to open your suitcase. When that happens, does that mean that I've gotten a Quad S boarding pass? No, if you've got a Quad S boarding pass, you'd see it on your boarding pass. But there's also people who go through what you might call regular screening and perhaps the metal detector is tripped and then you might get enhanced screening at that point or whatever the particular officer thought was appropriate in light of what was triggered. It could be you did something they thought was suspicious. So, but that's not the same thing. Who are these 98% people who are thinking that they want to go to the trouble of doing a trip inquiry, but turn out not to be on the selectee list? Do you have a sense? Are they just like people who had the experience I just described where, you know, I have to open my suitcase for a random screening and I think, well, that must mean I'm on a list. So I'm going to do a trip inquiry. It could be, Your Honor. I mean, as you pointed out, lots of people get enhanced screening because of random reasons or for reasons that have nothing to do with the watch list. The trip also covers, you can apply for redress if something happens to you at the border crossing. So there are people who maybe get a long delay and they're frustrated by that. And so they- Would it be fair? I appreciate that. I get it. Would it be fair to say that a lot of those 98% did not have as intrusive and time delaying a travel process as Mr. Jabril had? I just don't have the information in which to answer that question, Your Honor. I just don't know- I mean, that seems a little, I mean, I guess I can't not believe you, but it seems a little hard to believe that you're saying that all of those, you think there's a chance that all of those 98% had all of the inconveniences that I just described Mr. Jabril had before they filed a trip request? I just don't have any basis to answer that one way or the other. But I will say this, Your Honor. I do want to point out that when we're talking about injunctive relief or declaratory relief, any prospective relief, and we need to show a risk of future harm, it's important to look at the complaint very specifically and not lump all the allegations together. And what I mean by this is this. One of the Fourth Amendment complaints is that the pat-downs violated the Fourth Amendment. There was only one instance of pat-downs alleged in the complaint. She makes it seem like there's many of them, but there's actually only one, which was the departing trip from LA. There's another Fourth Amendment claim about cell phone surges. That occurred on one leg of the trip, not on all of them. There's an APA claim about the minors not being offered food or asked medical questions. That happened one time. And so when you're talking about one instance, I think it's very important to not to lump them all together and act as if everything is happening all of the time. I think that's strong, Mr. Waldman. The part of the complaint that I think has at least the greatest chance of standing is the challenge to the trip inquiry process. So let me ask you this. Assume two things that I know you don't agree with, but assume them for the sake of this question. I will. Assume I think that the DeBrill's future travel is imminent and assume I think they're on the selectee list. Then do they have standing to challenge the trip inquiry? If you think that they have shown a substantial likelihood that they will travel in the future and a substantial likelihood that they remain on the list post the trip process, then yes, Your Honor. And in fact, I think it's important to point out, we don't contend that you can never have standing. And in fact, the most recent case, El Hadi case in the Fourth Circuit, we did not contest standing in that case because of the particular allegations there. But here, I think it's very important, and I'm not trying to fight the premise of your question, Your Honor, but I do want to point out that in this case, all of the allegations happened in 2018.  for the very purpose of being removed from a list that they thought they were on and didn't think they belonged on it. And then after getting the response, they immediately rushed to federal court. They did not travel again. They have not attempted to travel again. And I think even if they get over all the hurdles about allegations of future plans and that they can show that they were on the list, I don't think that there's, in my mind, any plausible inference that they can draw based on the allegations of their complaint that they may not be on the list. What about inferring from the different response that the young child O.J. received? Imagine I am asked six questions, and for one of the six, I say, no, I wasn't at the murder scene. And then for the other five questions, I say, no comment. Wouldn't you draw, imagine I was asked if I was at six different murder scenes. And so one of them, I say, no, I wasn't there. For the other five murder scenes, I say, no comment. Wouldn't you draw an inference from that? I wouldn't, Your Honor, but because I read the O.J. letter, it's differently worded, but as essentially a Glomar response, just like the others. But at a maximum, I think the only inference you could draw then would be as to O.J. and not as to everyone else who on their face, their letter was a Glomar response. That is the point of the Glomar response. Why would O.J. receive a letter that says, basically, you're not on the list? Well, let me put it this way. There are a number of reasons and factors why the TSA sends out different letters under different circumstances. I can't, unfortunately, for the same security reasons that we don't disclose status, disclose those things. So I can't really get into that further, but I would say this. I think it is, whatever inference you might wanna draw as to that one letter. And I think that that's a Glomar letter. The others, very clearly, there's no inference to be drawn about the others, which just say we don't confirm or deny. Okay, I appreciate it. All right, let me ask you. Go ahead, Judge Edwards. Okay. You say if they have shown or presented enough to survive motion dismissed, that they will travel in the future and that they're on a select list, they should be allowed to proceed. I think that's accurate. I don't see your case on looking at the existing case law. I don't see your argument. I'm not compelled by your argument. That's why I'm raising it with you on their failure to show that they will travel in the future. I think they're way beyond what Lujan and the other such cases required. And they've done all they have to do. They have consistency in what they've done in their travel. And they've said, there's nothing to suggest we won't. We're gonna do it again. And I think Lujan suggested that's plenty enough. What is it that you are saying with respect to whatever you think they have or have not said about being on the select list? Well, I'd say a couple of things. One- And what more could they do given what the government is willing to... They were on it. The government has not said they're off of it. What more are they supposed to do? Well, for example, in some of the other cases, Your Honor, that we've seen where we have not contested standing, like El Hadi. You had people who had travel postdating their trip complaint and alleged that they continue to have the similar types of experiences. Well, surely that isn't a legal requirement, is it? That's an onerous, that's a terrible requirement that if someone is now afraid, legitimately afraid, and they wanna get this cured up, straightened out. So they want the court to give them some help. You're gonna say, no, you have to go first try and travel again? That can't be the law. Well, I'm not saying that that is the law, Your Honor, or a requirement, but you asked what they could do, and I'm giving you- Let's assume that they did, and it doesn't hurt their case in any way. So what else? So I'm not sure if you're asking about statements about intent of future travel or about showing that they're on a watch list. They've made the statements about intent for future travel. Okay. I do think it's important to realize too that some of the statements about it, like for example, the husband's statements in the complaint are different from the things that the rest of the family does. And so you might view that differently. In addition, as I was saying before, take for example, the APA claim about not asking questions about medical condition and not offering snacks to the minors. I think that happened one time. And- No, no, no. You get into the particulars of the claim. Yes. I'm focusing on how do they survive a motion to dismiss? You can find out the particulars in summary judgment on trial. You said they only need two things. They have to show that they're gonna travel in the future which deals with a standing issue and that they're on a select D list. I don't know how they failed that enough to avoid getting beyond motion to dismiss. I think it's, for me, it's an easy case that they've shown likelihood of traveling in the future. On the select D list, I'm not sure what you're saying. What else did they have to show that they didn't show? Well, I think that, I take your point that they don't know but of course they still need to allege specific facts. It can be on information and belief. And that was the point of the Kareem case that we cited in our brief about the droning case where the person did not know whether they were on a list but this court did not presume that they were on a list. It said you have to allege facts in your, make allegations in your complaint sufficient to make that plausible. And it's our view that the fact- Well, wait, you're on the list. You know, you were on the list. You file, you follow the government's procedure challenging it, the government responds and does not say you're off the list. What more am I, what more do I have to do? Well, I think- It is, it is- Let's assume that they've met their burden to show that- That they shouldn't be grossly offended by what happened. Let's assume that. So it's horrible. Let's assume that. Okay. So now, and it's because they were on a Select D list and they come in and say, look what happened to us. All of us, the kids included. It was a disaster and no one denies that. We were on a Select D list. We complained to the government and the government has not said we're off that list. Now, what more are they supposed to do? Well, I think- If I had the words on information and belief I think I'm still on it, that'll do it? No, Your Honor. But I do think that if you had, part of our argument is the relationship between what we think they haven't raised enough of an inference that they were on the list in the first place is, goes in tandem with even if they had shown that, they can't show that they were not removed from the list or that they would remain on the list in 2019 having sought that very relief. So we think if they had made allegations before 2018 that showed perhaps a series of trips over time in different times, they might raise a better inference that they were on the list to begin with. But we don't think that they've raised that inference here. But even if you disagree with us, and I take your point that maybe you don't, that's an argument that goes only to watch list and doesn't go at all to, I think, the Fourth Amendment and the APA claims, which were instances that happened that were about the manner in which a search was carried out and there where you're seeking adjunctive relief. It's my view that when you only have something happened to you one time and only one time that you can't show a substantial likelihood that it's going to recur again, basically. That's got to be right. I think that's right. That's particularly when in the same trip, you alleged say a pat down going, but no pat down coming back. And yet your Fourth Amendment claim is, I was pat down. I think that's lions. Lions, the substantive issue was mooted out because the city took it off the table. We've changed the policy, they said. So the city is acknowledging the existence of the policy in lions. And they said, in that case, the plaintiffs can't show that they're going to be subject to, and it's gone in any event, but that's not what's going on here. Yes, but I do think that the fact that you say there's an ongoing policy does not itself show a future risk, a likelihood of substantial risk of future harm, and that's clapper. There's an ongoing policy there, but they can't show that there's a future risk of harm. You always have to show the substantial risk of future harm in order to get prospective relief, whether it's an ongoing policy or not. And I think we- And the thing that's curious, and I'm just curious to hear your answer. And the thing that's curious to me, it's perplexing. I can't figure out what it is if you're in a situation where there's no way, my family and I want to face this again. This was really horrible. And I'm not going to go out to the airport right away and let's see if we can stir it up again. I want to get some relief. And it appears that if I have certain donations, designations on my ticket, I'm apparently on a list. And apparently the government thinks they can do what they did to me if I'm on that list. How do I get at that? Yeah, I mean, Your Honor, I think I do come back to the idea that, and I understand you might not want to travel to Jordan again, do an international trip. But of course, a selectee would apply from a trip from LA to San Francisco, anything domestic as well. You don't have to have your whole family necessarily travel with you and, or buy a costly ticket. So I think these are things that can help. I think we would all agree that in an extreme case, if you had never been subjected to travel, any travel requirements, you wouldn't have standing. And the converse is true in an extreme case where you had a hundred trips, I don't think there'd really be any doubt about standing. And I think the question here is sort of a hard one about if there's really like one trip where the things that you complained of happened to you one time on various legs, whether that's enough. And it's our view that it's not sufficient to show either that they're likely to be on, on the list in the first place, or that they would remain having sought redress specifically for that. And I think there's also a little bit of have their cake and eat it too aspect, which is to say our allegations of complaint definitely show that we're going to do something in the future, yet at the same time, we're just not gonna travel again because of what we fear might happen to us. I don't think that you can do both. I think you have to sort of pick which one you wanna go with and go with it. And that's our view here, Your Honor. And I'm happy to answer any other questions. I see I'm- I have a question. Yes. I have a question and it has to do with redress. I believe Judge Lamberth did not, he ended his standing inquiry with injury. If this goes back, what type of redress considering all of the confidential, classified, secret, whatever information can they get at? I mean, I guess it's possible that you would say without saying that you were ever, that they were ever on the list, that they are not on the list, but how free are you to give them this type of information? Well, as we explained in our brief, all the information is privileged and we would not disclose it and we would resist discovery on those grounds. But I think probably if we got past Article III jurisdiction, and there may be an issue of subject matter jurisdiction that was not addressed by the district court, assuming we got past all those jurisdictional questions and we were reaching the merits before we got to sort of what a remedy would be, every court of appeals who has addressed this question has rejected the due process challenge that's being raised here. So we never really get to that point, but if we did, we would say that it's privileged information, their status and- How about the Fourth Circuit case you just talked about? Yes, that also rejected the due process challenge, Al-Hadi. Okay, okay. Al-Hadi, the Tenth Circuit in a case called Abdi, and the Sixth Circuit in a case called Beydoun. I believe they're all cited in our brief. They all say essentially that there's no protected liberty interest that would implicate the due process clause with respect to the Selectee List. Okay, that's what I'm asking. As part of redress, can you find out if you were on the Selectee List? No. Okay, all right. Thank you. No, you can't. And the courts have effectively upheld that by rejecting the due process challenges, seeking exactly that. All right, okay. I do want to point out, and this is a footnote in our brief, that the process is different for U.S. citizens and U.S. persons with the No-Fly List. That's different from the Selectee List, though I just want to be clear about that. If we agree with you on everything, do you agree with Ms. Jump that this should have been dismissed without prejudice? Yes, a jurisdictional dismissal should be without prejudice. And I think that you could essentially affirm the district court with respect to its ruling on standing, but then, say, send it back just to change the nature of the judgment from with to without prejudice. All right, thank you. Ms. Jump, before you start, do you have that cite to your complaint? Yes, Your Honor, I do. I would point out that in paragraph 144 of the complaint- 144, you don't need to read it. We're in a hurry here. So 144, anywhere else? Yeah, 144, we refer to chilling effects. And then I would say also that leading up to that, in paragraphs 104 and 138 to 145, we discuss the intent. The plaintiffs do not say that they will not travel. They say that they refer to the chilling effects and the harm because of the lack of resolution, because of the impact- All right, okay, those are the numbers. All right, take just no more than two minutes. Yes, Your Honor, and thank you. I will say that to begin, as counsel stated, actually, in the rebuttal or in his arguments, he doesn't have the information. There is no magic number, and that's exactly the point. In the El Hadi case, there was discovery which was permitted. There was discovery permitted as to the specific facts regarding those specific plaintiffs. The court in El Hadi, which counsel relies on, and in the other cases, refer to the Rule 56 rulings. They refer to a motion for summary judgment, not add a motion to dismiss. It was allowed to go forward to see what could happen. And in fact, the El Hadi case specifically stated that had there been a Fourth Amendment claim, that the result would have been different, and here there is. Again, at this stage, at the motion to dismiss stage, courts must take all reasonable inferences in favor of the plaintiffs. What we have instead is that the defendants, the appellees, are effectively arguing, trust us on what these letters mean, trust us on what the different letters mean, and trust us on what they should have done, what they could have done, whether they're on the watch list, they refer in the appellate briefs to the declarations, which again, we believe to be inappropriately provided here or improperly provided here, but they refer in there by saying, that means it's even less likely that they'll get stopped again. So trust us on that process. That's not a motion to dismiss argument. That is a substantive argument. That is an argument, not for jurisdiction, but that goes to the merits, and plaintiffs should at a minimum be able to provide, go forward and see what they can get, what they can find out. At this point, with what's in the complaint, do the plaintiffs know enough to be able to win on a summary judgment? Maybe not, but that's not the stage where we are right now. And I think the plaintiffs deserve the chance to move forward, try discovery, and see if they can get there. And then again, I would state that, they do state in the opening paragraph that they make these allegations on information and belief, because that's all they can do, because the government holds the answers and not the plaintiffs. And with that, thank you, your honors, unless there are any more questions, we would submit our case. All right, thank you for your arguments, counsel. Madam clerk, call the next case.
judges: Henderson, Walker, Edwards